IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOE F. URBANEC,<br><br>    Plaintiff,<br><br>vs.<br><br>BOTTLING GROUP, LLC, a Delaware limited liability company;<br><br>    Defendant. | 8:21-CV-30<br><br>MEMORANDUM AND ORDER |

## I.  INTRODUCTION

Joe F. Urbanec has sued his former employer, Bottling Group, LLC, alleging, inter alia, he was discriminated against on the basis of age and was not paid his full wages prior to being terminated. Bottling Group, LLC, has moved for summary judgment on each of Urbanec's claims against it. For the reasons stated herein, the Court grants summary judgment in Bottling Group's favor.

## II.  BACKGROUND

Plaintiff, Joe F. Urbanec, was born in October 1957. Filing 22-1 at 5. Urbanec began working for Defendant, Bottling Group, LLC ("Bottling Group"), in 1980. Filing 22-1 at 6, 9. He generally performed satisfactorily during his early years of employment, although he was placed on a Performance Improvement Plan ("PIP") in 2004. Filing 22-1 at 12-16. Bottling Group conducted annual evaluations of Urbanec, referred to as performance development reviews or "PDRs." Filing 22-1 at 17. In 2013, Urbanec received a score of five on his PDR, which is a satisfactory rating. Filing 22-1 at 17-18; Filing 22-2 at 1, 17. In 2014, Urbanec received a score of six, a good review. Filing 22-1 at 19, Filing 22-2 at 1, 23.

1

In 2015, Erin Goldyn became Urbanec's manager. Filing 22-1 at 20; Filing 22-2 at 1. At the time, Urbanec was fifty-seven years old. Filing 22-1 at 5, 31. During 2015, Goldyn never did or said anything objectionable with respect to Urbanec's age and gave him a positive rating of six on his annual PDR. Filing 22-1 at 21, 44; Filing 22-2 at 27. In 2016, Goldyn evaluated Urbanec at a five on his PDR but cited as an area of improvement that Urbanec needed to be more respectful and professional in his communications, both with her and with others. Filing 22-1 at 22; Filing 22-2 at 30, 34. Also during 2016, Goldyn never said or did anything objectionable towards Urbanec based on his age. Filing 22-1 at 44. Likewise in 2017, Goldyn evaluated Urbanec at a five on his PDR and noted that he would need to continue to display a "positive, professional and respectful attitude" when dealing with her and others as well as improving his proficiency with the technology necessary for his job. Filing 22-1 at 26; Filing 22-2 at 35, 41. Goldyn neither said nor did anything objectionable toward Urbanec with respect to his age in 2017. Filing 22-1 at 45.

In 2018, Urbanec failed to meet his performance goal targets. Filing 22-2 at 45. Urbanec received a score of three on his 2018 PDR, indicating poor performance. Filing 22-1 at 27-28; Filing 22-2 at 42. In his 2018 PDR, Goldyn noted that Urbanec "failed to provide timely communication" and at times "was unprofessional in communications with other work groups and his manager." Filing 22-1 at 33; Filing 22-2 at 45. As a result of the unsatisfactory evaluation, Urbanec was placed on a PIP on January 8, 2019. Filing 22-1 at 32; Filing 22-2 at 46. The PIP stated that Urbanec needed to improve in the areas of professional and timely communication, ability to use technology, sense of urgency pertaining to follow-up, and utilizing trainings. Filing 22-2 at 46. The PIP, signed by Urbanec and Goldyn, warned that a "[f]ailure to immediately demonstrate significant and sustained improvement may lead to additional performance management." Filing 22-2 at 46. Urbanec testified that he believed he was put on the PIP due to

low sales numbers which were the result of a new competitor in the area. Filing 22-1 at 29. Urbanec testified that in 2018, Goldyn discriminated against him on the basis of age by hiring other employees who were younger than he, "nitpicking" on him during weekly calls, criticizing his technological skills, ignoring Urbanec and his wife on a company trip, and calling him an "old man" or "older age" on approximately two occasions. Filing 22-1 at 45-48.

On May 3, 2019, Goldyn was informed of an incident between Urbanec and a customer by the name of Terry Fletcher. Filing 22-1 at 35; Filing 22-2 at 1, 47-48; Filing 22-3 at 1. Fletcher claims Urbanec became upset after seeing Fletcher's business marketing a brand of water that was outside its contract with Bottling Group.[1] Filing 22-2 at 1, 47-48; Filing 22-3 at 1. According to Fletcher, Urbanec yelled at him, "What the f*** is that? You better get that sh** out of here immediately. I have the exclusive rights here and that water is not a Pepsi product. You need to get that sh** off the property right now. I'm going to my legal department." Filing 22-3 at 1. Fletcher instructed Urbanec to leave and never return to his property. Filing 22-3 at 1.

Urbanec denies that he used profanity during his encounter with Fletcher. Filing 22-1 at 35-36; Filing 25-1 at 7-8. Rather, he claims he only told Fletcher he had to remove the offending products within a week or two weeks but "[t]here wasn't no flying off the hook or whatever." Filing 25-1 at 8, 11. He never had contact with Fletcher prior to that day but believes Fletcher must have invented the details of the encounter. Filing 25-1 at 8-10. He testified he did not believe Goldyn was the one who made the story up. Filing 25-1 at 10.

Another Bottling Group employee informed Goldyn that Urbanec had used profane and inappropriate language while visiting Fletcher's business. Filing 22-2 at 1. Goldyn contacted

---

[1] The parties refer to the contract as being with PepsiCo. Throughout the evidence, PepsiCo and Bottling Group are treated as interchangeable or at least closely related, though the parties do not detail the exact nature of the relationship between the two entities. The distinction is immaterial, however, for the issues raised in the present motion.

3

Fletcher who confirmed the details of the incident and informed her Urbanec was banned from his premises as a result. Filing 22-2 at 1. On May 14, 2019, Bottling Group suspended Urbanec from his job. Filing 22-1 at 37; Filing 22-2 at 2. On June 4, 2019, Bottling Group terminated Urbanec. Filing 22-1 at 37; Filing 22-2 at 2, 49. Bottling Group stated the reason for Urbanec's termination was "Unprofessional Workplace Interaction" based on his encounter with Fletcher. Filing 22-2 at 49. In his deposition, Urbanec acknowledged that Bottling Group said nothing about his age when he was placed on the PIP in January 2019, when he was suspended on May 14, 2019, or when he was terminated on June 4, 2019. Filing 22-1 at 63. Bottling Group hired Jordan Sterup to replace Urbanec. Filing 25-1 at 16. Sterup was born in June 1989. Filing 25-1 at 16.

Urbanec filed a charge of age discrimination with the EEOC and the NEOC on November 4, 2019. Filing 22-1 at 69. He filed an Amended Charge on March 4, 2020. Filing 22-1 at 71. In his charges to the NEOC and EEOC, Urbanec alleged the earliest date of discrimination was May 14, 2019, (the date of his suspension), and the latest date of discrimination was his termination date of June 4, 2019. Filing 22-1 at 71. Urbanec claimed he had been discriminated on the basis of age by being suspended and terminated. Filing 22-1 at 71. He stated, "I believe the Respondent fabricated the story about the customer complaint due to wanting to get rid of me due to my age." Filing 22-1 at 71. He claimed Bottling Group had also pushed out other older employees. Filing 22-1 at 71.

On August 21, 2020, the NEOC issued a finding of no reasonable cause. Filing 22-1 at 73. Urbanec filed suit against Bottling Group in Nebraska state court on December 23, 2020, and Bottling Group subsequently removed the case to this Court. Filing 1; Filing 1-1. Urbanec alleged Bottling Group had violated the Age Discrimination in Employment Act ("ADEA") and the Nebraska Age Discrimination in Employment Act ("NADEA"). Filing 1-1 at 5-6. Urbanec also

4

asserted claims for violation of due process, tortious interference with a valid business relationship or expectancy, violation of the Fair Labor Standards Act ("FLSA"), and violation of the Nebraska Wage Payment and Collection Act ("NWPCA"). With respect to his NWPCA claim, Urbanec alleged he had "met the requirements for the bonus and incentive pay for the following accounts: Oxford Locker, Mrs. Robertson's Cotton Candy, Shows Round Top Bar and Grill, Arrowhead Meadows, Alma Golf Course, and Riverside Country Club." Filing 1-1 at 4.

### III. ANALYSIS

Bottling Group moves for summary judgment on each of Urbanec's claims.

#### A. Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce

evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Voluntary Dismissal of Claims and Motion for Extension

As set forth above, Bottling Group moved for summary judgment as to each of Urbanec's six causes of action. Twenty-six days after Bottling Group's motion for summary judgment, Urbanec filed a Motion for Partial Dismissal seeking to dismiss his claims for violation of due process, tortious interference, and violation of the FLSA without prejudice. Filing 23 at 1. The same day, Urbanec filed his brief and index in opposition to Bottling Group's summary judgment motion as to his ADEA, NADEA, and NWPCA claims. Filing 24. He also separately filed a Motion

for Extension of Time seeking additional time to respond to Bottling Group's summary judgment motion. Filing 26.

1. *Voluntary Dismissal*

A plaintiff can voluntarily dismiss a claim without court order by filing a notice of dismissal "before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). Otherwise, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2). Because Urbanec did not seek to partially dismiss his claims until after Bottling Group had filed a motion for summary judgment, the Court must determine whether such request should be granted and on what terms pursuant to Rule 41(a)(2).

"A decision whether to allow a party to voluntarily dismiss a case rests upon the sound discretion of the court." *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999) (citing *Bodecker v. Local Union No. P–46*, 640 F.2d 182, 186 n.5 (8th Cir. 1981)). "[A] party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum." *Id.* (citing *Holmgren v. Massey–Ferguson, Inc.*, 516 F.2d 856, 857 n.1 (8th Cir. 1975)). In determining whether to grant a motion for voluntary dismissal, the court considers the following factors:

> (1) whether the plaintiff has presented a proper explanation for the desire to dismiss, (2) whether the defendant has expended considerable effort and expense in preparing for trial, (3) whether the plaintiff exhibited "excessive delay and lack of diligence" in prosecuting the case, and (4) whether the defendant has filed a motion for summary judgment.

*Beavers v. Bretherick*, 227 F. App'x 518, 520 (8th Cir. 2007) (citing *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987)).

As to the first factor, Urbanec presented no reason for seeking to dismiss several of his claims at this late stage of the case. *See* Filing 23 (Urbanec's voluntary-dismissal motion containing no explanation for the request to dismiss). Furthermore, as to the second and fourth factors, Bottling Group has expended considerable effort and expense in this case as evidenced by having produced a full index and brief in support of summary judgment, including as to the claims Urbanec seeks to dismiss. As to the question of delay and diligence, Urbanec waited until Bottling Group had moved for summary judgment to seek to voluntarily dismiss the claims and he was five days late in responding to Bottling Group's summary-judgment motion. Finally, as Urbanec initially filed this case in state court and only moved to voluntarily dismiss certain claims after Bottling Group explained the bases for seeking summary judgment on those claims, the Court concludes there is a risk Urbanec is seeking dismissal "merely to escape an adverse decision [or] to seek a more favorable forum." *Hamm,* 187 F.3d at 950. Thus, the Court concludes that while Urbanec's request for voluntary dismissal of the due-process, tortious-interference, and FLSA claims should be granted, such dismissal should be with prejudice.

2. *Motion for Extension*

Next, the Court addresses Urbanec's late request for extension of time in which to respond to Bottling Group's Motion for Summary Judgment. On January 10, 2022, twenty-five days after Bottling Group filed for summary judgment, Urbanec filed his brief in opposition, Filing 24; index in opposition, Filing 25; and a motion for extension of time, Filing 26. The motion for extension of time sought to allow until January 12 for Urbanec to oppose Bottling Group's motion for summary judgment, although he had already docketed the late briefs at the time he requested the extension. Filing 26 at 1.

Under Nebraska Civil Rule 7.1, "[a] brief opposing a motion . . . for summary judgment must be filed and served within 21 days after the motion and supporting brief are filed and served." NECivR 7.1(b)(1)(B). Urbanec did not file his opposition brief until twenty-five days after being served with Bottling Group's summary-judgment motion. Although Urbanec did not seek to extend this deadline until after it had already passed and he had already filed his untimely brief, the Court nevertheless exercises its discretion to grant his motion and accept his late-filed brief. Thus the Court proceeds to address Bottling Group's summary-judgment motion only as to Urbanec's remaining claims for age discrimination under the ADEA and NADEA and violation of the NWPCA.

### C. Age Discrimination

Bottling Group moves for summary judgment on Urbanec's claims of federal and Nebraska age discrimination, arguing there is no direct evidence of discrimination, Urbanec has not made out a prima facie case of discrimination because he was not meeting his employer's reasonable expectations, and even if Urbanec could make out a prima facie case of discrimination, he cannot demonstrate Bottling Group's reasons for terminating him were a mere pretext for discrimination. Filing 21 at 13-19. Urbanec responds that his prior performance reviews were all positive, his coworkers also received poor performance reviews in 2018 when he did due to increased competition, and the evidence of the interaction with Fletcher that led to his termination is in dispute. Filing 24 at 12-15. The Court concludes Bottling Group is entitled to summary judgment on these claims.

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., "prohibits discrimination against employees, over the age of 40, because of their age." *Canning v. Creighton Univ.*, 995 F.3d 603, 610–11 (8th Cir. 2021), *cert. denied*, No. 21-434, 2021 WL 5763111 (U.S.

Dec. 6, 2021) (quoting *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 798 (8th Cir. 2014)). The Nebraska Age Discrimination in Employment Act ("NADEA"), Neb. Rev. Stat. § 48-1001 et seq., likewise prohibits age discrimination and "is patterned after the federal Age Discrimination in Employment Act of 1967, so, in construing the [NADEA], it is appropriate to look to federal decisions interpreting the federal act." *Oldfield v. Neb. Mach. Co.*, 894 N.W.2d 278, 292 (2017) (footnote omitted) (citing *Billingsley v. BFM Liquor Mgmt.*, 645 N.W.2d 791, 803 (2002)). "A claim under the ADEA requires proof by a preponderance of the evidence that age was the but-for cause of the challenged employer decision." *Canning*, 995 F.3d at 611 (citing *Tramp*, 768 F.3d at 800). "When there is no direct evidence of discrimination, the plaintiff may establish an inference of discrimination under the *McDonnell Douglas*[] burden-shifting framework." *Id.* (citing *Tramp*, 768 F.3d at 800); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "First, the plaintiff must satisfy a four-part prima facie case of age discrimination: (1) the plaintiff 'is over 40 years old'; (2) the plaintiff 'met the applicable job qualifications'; (3) the plaintiff 'suffered an adverse employment action'; and (4) 'there is some additional evidence that age was a factor in the employer's termination decision.'" *Canning*, 995 F.3d at 611 (quoting *Tramp*, 768 F.3d at 800).

"Once the plaintiff establishes this prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Id.* (citing *Tramp*, 768 F.3d at 800). "If the employer articulates such a reason, the plaintiff is then required to show that the employer's reason was pretext for discrimination." *Id.* (citing *Tramp*, 768 F.3d at 800). "Though the burden of production shifts to the employer, the plaintiff always bears 'the burden of persuasion to prove that age was the 'but-for' cause of the termination.'" *Id.* (quoting *Tramp*, 768 F.3d at 800).

10

*1. Direct Evidence of Discrimination*

Bottling Group argues there is no direct evidence of discrimination because Urbanec admitted Goldyn never said anything negative about his age from 2015 to 2017 and because Urbanec admitted his age was not mentioned when he was placed on a PIP, suspended, or ultimately terminated. Filing 21 at 13-17. Urbanec does not respond to this argument and instead apparently concedes there is no evidence of direct discrimination by proceeding immediately to the burden-shifting test in his brief. Filing 24 at 11. Upon review, the Court agrees there is no evidence of direct discrimination in the record and thus the Court must apply the *McDonnell-Douglas* burden-shifting framework to determine whether Urbanec has established an inference of discrimination.

*2. Prima Facie Case*

As set forth above, to create a prima facie case of age discrimination, Urbanec must demonstrate the four prongs of being over the age of forty, meeting the applicable job requirements, suffering an adverse employment action, and there being additional evidence that age was a factor in the decision, such as being replaced by someone substantially younger. *See Canning*, 995 F.3d at 611; *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 642 (8th Cir. 2008) (fourth element can be satisfied by demonstrating the employee was replaced by someone substantially younger). Bottling Group concedes that Urbanec was over forty, suffered an adverse employment action when he was fired, and was replaced by Sterup who was substantially younger. Filing 21 at 17-18. Thus, the parties focus on the second element: whether Urbanec was meeting the applicable job requirements.

Urbanec argues the evidence shows he was meeting the applicable job requirements because his performance reviews were generally positive and when he did receive negative PDRs,

11

they were either the same as his coworkers' poor reviews or the result of Goldyn discriminating against him. Filing 24 at 12-13. Bottling Group argues Urbanec was not meeting the applicable job requirements because, at the time of his termination, he was already on a PIP and had been critiqued for inadequate communication and technological skills. Filing 21 at 17-18.

Urbanec's PIP made it clear that Bottling Group found his job performance unsatisfactory. It noted he needed to improve in the areas of professional and timely communication, ability to use technology, sense of urgency pertaining to follow-up, and utilizing trainings. Filing 22-2 at 46. The fact that other employees may also have been performing poorly does not detract from the evidence that Urbanec was not meeting requirements applicable to his position. Although Urbanec had positive PDRs in previous years, the relevant time period was Urbanec's job performance at the time of the adverse employment action, which is when he was on the PIP. *See Roeben*, 545 F.3d at 642 (stating the second factor is whether "he was meeting his employer's reasonable expectations at *the time of his termination*" (emphasis added)). Thus, Urbanec has not made out a prima facie case for age discrimination because the undisputed evidence shows he was not meeting the requirements of his job at the time he was terminated.

    3. *Bottling Group's Nondiscriminatory Reason for Terminating Urbanec*

However, even assuming Urbanec could set forth a prima facie case for age discrimination by showing he was performing his job satisfactorily, his claim still must fail because he cannot demonstrate Bottling Group's purported reason for terminating him was a mere pretext for age discrimination.

Following the establishment of a prima facie case, "the burden of production shifts to [Bottling Group] 'to articulate some legitimate, nondiscriminatory reason for the employee's [termination].'" *Canning*, 995 F.3d at 611 (second alteration in original) (quoting *McDonnell*

*Douglas*, 411 U.S. at 802). "[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981)). "However, this burden is 'not onerous' and does not require proof by a preponderance of the evidence." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011)).

Bottling Group's purported reason for terminating Urbanec was primarily his encounter with Fletcher. Filing 22-2 at 49. Additionally, Bottling Group points out Urbanec's problems with "poor sales and other performance issues" as noted in his later PDRs and his PIP. Filing 21 at 19. Thus, Bottling Group has met its minimal burden of articulating a legitimate, nondiscriminatory reason for Urbanec's termination.

4. *Pretext*

"After an employer produces a legitimate, nondiscriminatory reason for termination, the burden shifts to the terminated employee to put forth proof that the proffered reason was not the true reason for discharge because it was merely 'a pretext for discrimination.'" *Canning*, 995 F.3d at 611 (quoting *Kohrt v. MidAm. Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004)). "Although 'a plaintiff may establish pretext by showing that the employer did not truly believe the employee engaged in the conduct justifying termination,' if the employer's proffered reason was 'truly . . . the reason for the plaintiff's termination,' we will not 'decide whether [that] reason was wise, fair, or even correct.'" *Id.* (alteration in original) (quoting *Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020)).

Urbanec argues Bottling Group's reliance on the encounter with Fletcher to fire him was a mere pretext for discrimination. Filing 24 at 14. Although in his EEOC and NEOC charge Urbanec initially contended that Bottling Group had fabricated the incident with Fletcher as a pretext for firing him, Filing 22-1 at 71, in his deposition he admitted that Bottling Group had not lied about

hearing about the Fletcher encounter and utilizing it as the basis for firing him, Filing 25-1 at 10. Instead, Urbanec disputed he had used profanity against Fletcher and claimed Fletcher, who he had never met before the day of the incident, must have been the one who lied about the facts of the encounter. Filing 25-1 at 8-10. Because Bottling Group's "proffered reason was 'truly . . . the reason for the plaintiff's termination,' [the Court] will not 'decide whether [that] reason was wise, fair, or even correct." *Canning*, 995 F.3d at 611 (quoting *Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020)); *see also Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470 (8th Cir. 2011) ("[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." (alteration in original) (quoting *Roeben*, 545 F.3d at 643)).

  Urbanec also points to evidence that Goldyn repeatedly criticized him, hired employees who were younger than Urbanec, called him an "old man" or "older age" on two occasions, and ignored Urbanec and his wife on a company trip as demonstrating Bottling Group's purported reason for terminating him was merely pretextual. Filing 24 at 15-17. Criticism and social shunning unrelated to age combined with, at most, two stray age-based comments unrelated to the decisional process and the hiring of younger employees are not adequate facts "to prove that the employer's proffered reason was a pretext and that the true motivation was discriminatory animus." *Roeben*, 545 F.3d at 642–43; *see also Simmons v. Oce-USA, Inc.*, 174 F.3d 913, 915 (8th Cir. 1999) ("Stray remarks made in the workplace are not sufficient to establish a claim of discrimination." (citing *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991))). Importantly, Urbanec admits that his age was never mentioned when he was placed on the PIP, suspended, or terminated. Filing 22-1 at 63; *see also Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426

14

(8th Cir. 1999) ("[S]tray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself will not suffice." (internal quotation marks and citations omitted)). Accordingly, Bottling Group is entitled to summary judgment on Urbanec's ADEA and NADEA claims.

### D. Nebraska Wage Payment and Collection Act

Lastly, Bottling Group argues it is entitled to summary judgment on Urbanec's claim under the Nebraska Wage Payment and Collection Act ("NWPCA") because there is no evidence Urbanec is entitled to unpaid bonuses. Filing 21 at 24-25. The Court agrees.

"The [Nebraska Wage Payment and] Collection Act provides a cause of action for employees to recover unpaid wages." *Acosta v. Tyson Foods, Inc.*, 800 F.3d 468, 472 (8th Cir. 2015) (citing Neb. Rev. Stat. § 48–1231(1)). Under the NWPCA, "wages" are defined as "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee." Neb. Rev. Stat. § 48–1229(6).

In his complaint, Urbanec argues he "met the requirements for the bonus and incentive pay for the following accounts: Oxford Locker, Mrs. Robertson's Cotton Candy, Shows Round Top Bar and Grill, Arrowhead Meadows, Alma Golf Course, and Riverside Country Club" in support of his claim under the NWPCA. Filing 1-1 at 4. In his deposition, Urbanec claimed he had also not been paid for his 2019 second-quarter bonus. Filing 22-1 at 56-57. With respect to the customer bonuses specifically outlined in his complaint, Urbanec testified only that he "d[idn't] have any documentation" and "h[as] no paperwork" to prove he is entitled to bonus pay. Filing 22-1 at 61-62. Urbanec presented no other testimony or evidence to support his NWPCA claim.

In contrast, Goldyn averred in her declaration that Bottling Group pays bonuses on a quarterly basis and an employee must work the entire quarter to qualify for bonus pay. Filing 22-2 at 2. Because Urbanec was terminated on June 4, 2019, he did not complete the second quarter and was therefore not eligible for a bonus, even if he had properly alleged this as the basis for his claim in his complaint. Filing 22-2 at 2. Additionally, Goldyn averred that Urbanec did not qualify for a bonus as to any sales made to golf courses because "[t]o qualify for incentive pay on that [golf course] promotion, there must have been sales of at least fifteen (15) cases of product [and] Joe Urbanec did not meet the minimum amount of sales." Filing 22-2 at 2. Finally, Goldyn averred that "[t]here is no record of sales ever being made to Oxford Locker, Mrs. Robertson's Cotton Candy, or Shows Round Top Bar and Grill, and there are similarly no records indicating those organizations have ever been customers" of Bottling Group. Filing 22-2 at 2.

> Federal Rule of Civil Procedure 56 provides,
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .

Fed. R. Civ. P. 56(c)(1)(A). Bottling Group presents competent evidence in the form of Goldyn's declaration to establish that Urbanec is not entitled to any unpaid wages. *See* Filing 22-2. In contrast, Urbanec presents no testimony or evidence to create a dispute of fact. Rather, he testified only that he has no supporting paperwork or documentation. Filing 22-1 at 61-62. Likewise, in his brief Urbanec claims that he "*can* testify" to his completion of the bonus requirements and argues he cannot present documentary evidence of the bonus entitlement because he "was not allowed access to his computer because Defendant prevented him from accessing it once he was terminated." Filing 24 at 17 (emphasis added).

Urbanec's promise in his brief that he "can" present testimony to support his claim is not actual evidence and is inadequate to create a disputed material fact for purposes of summary judgment. *See Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016) (granting summary judgment due to the nonmoving party's "reliance on incompetent and inadmissible evidence"). Additionally, Urbanec provides no explanation for his failure to conduct discovery to uncover the documentary evidence he claims Bottling Group has on his former computer. The docket reveals Urbanec never raised any issues with the discovery process to the Court. The undisputed evidence in the record demonstrates no wages which Bottling Group failed to pay to Urbanec. Accordingly, Bottling Group is entitled to summary judgment on Urbanec's claim for unpaid wages under the NWPCA.

### IV.     CONCLUSION

For the reasons set forth herein, the Court grants summary judgment to Bottling Group as to all of Urbanec's claims.

IT IS ORDERED:

1. Urbanec's voluntary Motion to Dismiss, Filing 23, is granted in part and his claims for violation of due process, tortious interference with a business relationship, and violation of the FLSA are dismissed with prejudice;

2. Urbanec's Motion for Extension of Time to File a Responsive Pleading, Filing 26, is granted and his responsive brief is deemed timely;

3. Bottling Group's Motion for Summary Judgment, Filing 20, is granted as to Urbanec's claims for violation of the ADEA, NADEA, and NWPCA; and

4. The Court will enter a separate judgment.

Dated this 7th day of March, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge